# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

JEFFERSON DAVIS COUNTY SCHOOL DISTRICT            PLAINTIFF

VERSUS            CIVIL ACTION NO. 2:08cv190KS-MTP

RSUI INDEMNITY COMPANY            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Plaintiff's motion to exclude expert testimony of Robert Boessen, Brian Hulsey, and Phillip Nigus [Doc. #189]. The court, having reviewed the motions, the responses, the rebuttals, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the motions should be **denied.**

Also before this Court is Defendant's Motion to Strike the Exhibits D and E to Plaintiff's Motion To Exclude Expert Testimony of Boessen, Hulsey, and Nigus [Doc. # 213]. The court, having reviewed the motions, the responses, the rebuttals, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the motions should be **denied.**

Also before this Court is Plaintiff's Motion to Strike the Affidavits of Boessen and Nigus submitted in support of RSUI's Response to Plaintiff's Motion to Exclude the Testimony of Boessen, Hulsey, and Nigus [Doc. # 233]. The court, having reviewed the motions, the responses, the rebuttals, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the motions should be **denied.**

1

## I. FACTUAL BACKGROUND

On August 29, 2005, the Jefferson County School District's facilities suffered damage as a result of Hurricane Katrina. The instant case involves the resulting dispute between the excess policy carrier RSUI Indemnity Company and the District regarding the extent, the cause, and the amount of the loss. Both sides have put forth experts to address the extent of the damage to the numerous buildings throughout the district and to put a reasonable value on the necessary replacements and repairs.

## II. STANDARD OF REVIEW

Federal Rule of Evidence 702, amended post-*Daubert* in 2000, provides that a witness "qualified as an expert … may testify … in the form of an opinion … if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). "*Daubert* . . . assigned the trial court a gatekeeper role to ensure such testimony is both reliable and relevant." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

"Many factors bear on the inquiry into the reliability of scientific and other expert testimony. In *Daubert*, the Supreme Court offered an illustrative, but not an exhaustive, list of factors that district courts may use in evaluating the reliability of expert testimony." *Id.* These

factors include:

>   (1) whether the expert's theory can be or has been tested;
>
>   (2) whether the theory has been subject to peer review and publication;
>
>   (3) the known or potential rate of error of a technique or theory when applied;
>
>   (4) the existence and maintenance of standards and controls; and
>
>   (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (en banc). Subsequently, in *Kumho Tire Co.*, the Supreme Court noted that the *Daubert* analysis is "flexible," and that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." 526 U.S. at 150. The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

"Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "[T]he trial court's role . . . is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)).

Nonetheless, "[t]he proponent of expert testimony . . . has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), and must establish the admissibility requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

### III. APPLICATION AND ANALYSIS

In the pending motions, the District seeks to exclude the testimony of Robert Boessen, Brian Hulsey, and Phillip Nigus. The Court will evaluate the proposed testimony of each witness in turn, as well as related evidentiary motions related to the testimony of each expert.

#### A. RSUI's Roofing Experts: Boessen, Hulsey, and Nigus

Boessen, RSUI's roofing expert, visited the five campuses in question in April and July of 2007 and took pictures of the roofs. He then analyzed his findings and compiled the data into a report detailing the extent of the damage to the roofs. Hulsey and Nigus peer-reviewed Boessen's work but never visited the campus. None of the experts' qualifications are at issue.

The School seeks to exclude the testimony of Boessen because his methodology was unreliable. Using the time/date stamp on the photographs taken by Boessen, the School's attorney compiled a spreadsheet containing the picture number, what it captured, and the time it was taken. (EX. D). Then, using the data from the pictures, the attorneys estimated the time Boessen spent per roof, and compared these times with the time that Hulsey and Nigus said would be the minimum time to properly inspect each roof. (EX. E). In almost all the cases, the time that Boessen allegedly spent on each roof fell below the times offered in Hulsey and

Nigus's depositions.

RSUI argues that the School has not shown that Boessen did not follow a proper methodology, but only that, in its opinion, he inspected too quickly. They state this goes to credibility not reliability, and that it should be a jury issue. The District has not alleged that Boessen failed to consider or overlooked relevant evidence in his inspection. The Court agrees that Boessen's analysis is reliable under Federal Rules 702 and 703. Rule 702 is designed to test the reliability of the experts' methods and relevant experience, not the strength or weakness of their conclusions. Here, Boessen relied on his knowledge and experience with roofing systems, his first-hand impressions and observations, and review of photographs. It is the province of the jury to determine the credibility of the experts' conclusions and if the conclusions offered by the experts are correct. The District's issues with the time spent per roof can certainly be presented to the jury on cross-examination. However, the Court does not find that the testimony should be excluded as unreliable under Federal Rule of Evidence 702, and therefore, the motion to exclude Boessen's testimony should be denied.

The District argues that the testimony of Nigus and Hulsey should be excluded because they have never visited the property. They argue that since they have no first hand knowledge of the property, they can only testify that they agree with the conclusions of Boessen, which would be cumulative and unhelpful to the jury. The extensive Dressler Report that assessed the damage to the roof systems was authored by all three of these men. Motion to Exclude Testimony of Boessen, Hulsey, and Nigus, Ex. G [Docs. # 189-8, 189-9, & 189-10]. Nigus and Hulsey's reliance on pictures and the visual observations of Boessen in contributing opinions in this report is not contrary to Federal Rules of Evidence, and therefore the motion to exclude the

testimony of Nigus and Hulsey should be denied.

### B. Motions Relating to the Testimony of Boessen, Hulsey, and Nigus

In a related motion, RSUI seeks to exclude Exhibits D and E which summarize the time/date stamps from the photographs and compare them with the suggested inspection times given by Hulsey and Nigus in their deposition testimony. [Doc. # 213]. They argue that the time/date stamp does not accurately portray the time spent on each roof. For example, if the first picture of roof A was taken at 9:52 a.m. and the last picture of roof A was taken at 9:56 a.m., the School calculates that Boessen spent 4 minutes on the roof. However, RSUI argues that this is misleading, because he could have been on that roof for time before and after the pictures were taken. Further, it does not account for time spent on roofs during his second inspection, or for time spent analyzing pictures. And finally, it fails to account for his visual inspection of neighboring roofs while standing on a different roof.

In support of this contention, Boessen provided an affidavit stating that the time/date stamps are an inaccurate portrayal of time spent on roofs and only provides "some guidance," which the School argues conflicts with his deposition testimony:

> Q. I guess your notes would reflect how much time you spent on each of those roofs?
> A. Not necessarily. Again, the photographs have -- are time stamped, so when I did an overview of the specific roof, I tried to take a picture that designates -- that kind of give me the type of system, the type of penetrations, etcetera. And then the photograph of the next building would designate how much time between specific buildings.

Exhibit A to the Motion, Dep. of Boessen at 73. Also:

> Q. Okay. And just to hopefully put this issue to rest, if I wanted to find out what times you were at each of these buildings, I could look at your

>                photographs at the time and date stamp; is that correct?
>
> A.    Yes, ma'am. Yes. Go ahead.

*Id.* Nigus's affidavit also clarifies that the picture time/date stamps can only provide a "rough estimate" of time spent on each roof. The School seeks to exclude both affidavits in yet another motion. [Doc. # 233]. They claim that both affidavits conflict with previous deposition testimony and further, that Nigus's affidavit is based on hearsay, as Nigus has no first hand knowledge of how the inspection was conducted.

An affidavit may "supplement deposition testimony, but cannot contradict prior testimony without explanation." *Bouvier v. Northrup Grumman Ship Sys.*, 2009 WL 3444765 (5th Cir. 2009)(citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

The Court finds that the affidavit of Boessen does not contradict but clarifies that the time/date stamps on the photographs can be used to estimate the time he spent on the roof, but not to compute an exact time he spent analyzing each roof. As discussed above, the time/date stamp calculations fails to consider subsequent campus visits, time spent looking at the photographs, and time spent observing other roofs from an adjacent roof. The motion to strike Boessen's affidavit is denied.

The Court finds that the affidavit of Nigus does not contradict, but clarifies his statements. Of course, since Nigus has not visited the campus, much less during one of Boessen's inspections, the court recognizes that his opinion of the time spent inspecting each roof is mere speculation, and is therefore, of limited value. The motion to strike Nigus's affidavit is denied.

Finally the Court finds that the Motion to Strike Exhibits D and E should be denied.

First, Exhibit D is a mere compilation of the information on the photographs. That the District summarized what was depicted in each picture, where they could determine what was depicted, does not convert this compilation of data into expert testimony as suggested by RSUI. The next exhibit, Exhibit E, is a compilation of speculation. The first column, "Boessen's Actual Time" is a guess as to how long Boessen spent on the roof, the second and third columns, "Hulsey's Minimum Time" and "Nigus Minimum Time" are guesses by Hulsey and Nigus, without ever having seen any of the roofs, as to how long an inspection may take. The Court denies the Motion to Strike Exhibits D and E, but reiterates the limited value of these exhibits to determining whether or not these experts were sufficiently qualified and employed a reliable methodology.

## IV. CONCLUSION

For the reasons given above, the Court has reached the following conclusions: (1) The School District's motion to exclude the testimony of Boessen, Hulsey, and Nigus is denied; (2) the District's motion to strike the affidavits of Nigus and Boessen is denied; and (3) RSUI's motion to strike Exhibits D and E of the District's Motion to Exclude the testimony of Boessen, Hulsey, and Nigus is denied.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the District's motion to exclude testimony of Defendant's expert witnesses [Doc. # 189] is **denied.**

IT IS, FURTHERMORE, ORDERED AND ADJUDGED that the District's motion to strike affidavits of Boessen and Nigus [Doc. #233] is **denied**.

IT IS, FURTHERMORE, ORDERED AND ADJUDGED that the District's motion to strike Plaintiff's exhibits D and E to Plaintiff's motion to exclude Boessen, Hulsey, and Nigus

[Doc. #213] is **denied**.

SO ORDERED AND ADJUDGED on this, the 7th day of January, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE